# STATE OF CONNECTICUT *v.* DAVID K. HERBERT
## (AC 26157)

Flynn, C. J., and Gruendel and Berdon, Js.

Argued September 12, 2006—officially released January 2, 2007

*April E. Brodeur,* special public defender, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, state's attorney, and *Sarah E. Steere*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, David K. Herbert, appeals from the judgment of conviction, rendered after a trial to the court, of one count of assault of a peace officer in violation of General Statutes § 53a-167c (a) (1), two counts of interfering with an officer in violation of General Statutes § 53a-167a (a), one count of reckless driving in violation of General Statutes § 14-222 (a) and one count of failure to bring a motor vehicle to a full stop when signalled in violation of General Statutes § 14-223 (a). The defendant received a total effective sentence of three years incarceration, execution suspended after six months, with three years probation.[1] On appeal, the defendant claims that the trial judge improperly failed to recuse herself or declare a mistrial, sua sponte, after she allegedly created the appearance of judicial partiality. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our consideration of the issues on appeal. On December 31, 2001, Officer Joseph Clark of the Groton police department observed the defendant driving his motor vehicle with a flat tire. After the defendant entered a shopping center parking lot, Clark activated his emergency lights and sirens. Because the defendant

---

[1] On the charges of reckless driving and failure to bring a motor vehicle to a stop when signalled, the court imposed an unconditional discharge, respectively. The court imposed conditions of probation and a fine of $35 with the fine remitted and fees and costs waived, which required the defendant to: (1) submit to psychiatric evaluation and counseling deemed appropriate; (2) submit to substance abuse evaluation, testing and treatment deemed appropriate, including random urine tests; and (3) perform fifty hours of community service.

failed to stop, Clark drove his police car in front of the defendant's motor vehicle in an effort to initiate a stop. The defendant continued to operate his motor vehicle and proceeded to exit the parking lot. Clark then notified the Groton police of the defendant's failure to stop his motor vehicle.

After driving an additional three-eighths of a mile, the defendant came to a halt at his residence. As the defendant exited his vehicle, Clark ordered the defendant to put his hands on the roof of his car, but the defendant refused to comply. Instead, the defendant entered his home while Clark was attempting to arrest him. A few minutes later, Officer James Gauthier arrived at the defendant's home. As a result of the defendant's continued noncompliance, a skirmish ensued between the defendant and the two police officers, causing Clark to sustain injuries.

The state charged the defendant with assault of a peace officer, interferring with an officer, reckless driving and failure to bring a motor vehicle to a full stop when signalled. During the defendant's testimony at trial, the defendant stated that his family was originally from Enfield, North Carolina. The trial judge, *Cofield, J.*, then responded that she also was from Enfield, North Carolina. After learning the name of the defendant's mother, Judge Cofield stated that she may have met his mother several years prior at a function at which Judge Cofield had been the keynote speaker. Both parties, however, assured the trial judge that they did not regard this tenuous connection between the trial judge and the defendant's mother as problematic, and, consequently, Judge Cofield continued to preside over the remainder of the trial.

Sometime after the trial judge returned a guilty finding on all counts on September 26, 2003, the defendant's

mother sent letters to various state agencies, governmental officials and organizations accusing the court of participating in a legal lynching of the defendant.[2] On March 12, 2004, a hearing was held concerning the return of Clark's confidential medical records, which the defendant's girlfriend improperly had taken and faxed to the town of Groton. At this hearing, Judge Cofield also noted her dissatisfaction with the accusatory letters.[3] On June 1, 2004, the defendant's attorney filed a motion to withdraw appearance due, in part, to the content of the letters sent by the defendant's mother.[4] Judge Cofield granted the motion for withdrawal of appearance on July 12, 2004, and, at the hearing, she expressed her belief that her recusal was not

[2] The defendant's mother apparently sent letters to the attorney general of Connecticut, a congressman and to the National Association for the Advancement of Colored People. Although we have not viewed the letters because they are not a part of the record, we have been able to surmise, on the basis of testimony given at proceedings after the court found the defendant guilty, that they alleged ineffective assistance of counsel and stated that Judge Cofield should not have presided over the defendant's trial after she discovered that she was from the same hometown as the defendant's mother.

[3] Judge Cofield made the following remarks to the defendant at the March 11, 2004 hearing: "And to make an allegation that somehow this court with a strong commitment to civil rights was involved in a legal lynching is enough to make me get very upset. I am not happy with these baseless, slanderous allegations, and I want you to know that. And I hope that the letter that you sent to attorney [general Richard] Blumenthal accomplishes something for you. But I think what you have done is shot yourself in the foot. You engaged in some very self-defeating behaviors. It's not very smart or intelligent to go out and do something aggravating to a victim who has something to say to the court at the time of sentencing. Not very smart to go out and create a bad situation for that person or with that person. The activity that has happened here is just totally unacceptable and it's created some damage and I just don't know where all the fallout is going to be. And I really want to research my own options in terms of whether I should continue in this case because it strikes at the core of my integrity and I'm personally offended."

[4] In the hearing on the motion for withdrawal, the defendant's counsel indicated that his withdrawal was necessary not only because the defendant had expressed his dissatisfaction with the decisions made concerning the trial forum but also because of the activities of the defendant's mother and

necessary. On September 2, 2004, the court appointed a public defender to represent the defendant.[5] During the hearings on July 12 and September 2, 2004, the defendant repeatedly stated that he was not responsible for sending the letters, nor did he endorse the allegations contained therein.

At the commencement of the sentencing on November 22, 2004, Judge Cofield inquired as to whether the defendant had filed a motion for her to recuse herself. The defendant replied in the negative, confirming that he had never filed a motion for recusal. The judge then asked the defendant, "You've never asked me to excuse myself in this case?" The defendant responded, "No." After that exchange, the court imposed a sentence on the charge of assault of a peace officer of three years incarceration, execution suspended after six months, followed by three years of probation. With respect to the two counts of interfering with an officer, the court imposed a sentence of thirty days, concurrent to each other and to the main sentence.

On appeal, the defendant claims that the trial judge was required to recuse herself or to declare a mistrial, sua sponte, because of statements made by the judge at the hearings several months prior to the sentencing, which allegedly gave an appearance of judicial bias. The defendant concedes that he failed to move for judicial recusal or for mistrial before the trial court and now requests review pursuant to the plain error doctrine,

---

girlfriend. In particular, the defendant's counsel was distressed to learn that the defendant's girlfriend had obtained confidential medical records of Clark from the file. Further, the defendant's counsel was offended significantly by the previously mentioned letters, which the defendant's mother wrote, that accused the court and counsel of conducting a legal lynching.

[5] Judge Cofield then informed the newly appointed public defender of the letters written by the defendant's mother and their content, the lack of a motion for recusal and her opinion that she need not recuse herself.

which is codified at Practice Book § 60-5,[6] or under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[7]

"It is well settled that courts [generally] will not review a claim of judicial bias on appeal unless that claim was properly presented to the trial court through a motion for disqualification or a motion for mistrial." (Internal quotation marks omitted.) *State* v. *McDuffie*, 51 Conn. App. 210, 216, 721 A.2d 142 (1998), cert. denied, 247 Conn. 958, 723 A.2d 814 (1999); see also *State* v. *D'Antonio*, 274 Conn. 658, 672, 877 A.2d 696 (2005). "We have repeatedly indicated our disfavor with the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, with the assignment of such errors as grounds of appeal." (Internal quotation marks omitted.) *State* v. *Durant*, 94 Conn. App. 219, 230, 892 A.2d 302, cert. granted on other grounds, 278 Conn. 906, 897 A.2d 100 (2006). However, because a claim of the appearance of judicial bias "strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary"; (internal quotation marks omitted) id.; we nonetheless have reviewed unpreserved claims of judicial bias under the plain error doctrine. See, e.g., *State* v. *D'Antonio*, supra, 669; *State* v. *Gauthier*, 73 Conn. App. 781, 790–92, 809 A.2d 1132 (2002), cert. denied, 262 Conn. 937, 815 A.2d 137 (2003).

---

[6] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

[7] Although the defendant requests review of his claim pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, we decline review because we conclude that the defendant has failed to establish a constitutional claim. The defendant's claim of judicial bias "based solely upon the *appearance* of partiality, does not rise to the level of a constitutional violation." (Emphasis added; internal quotation marks omitted.) *State* v. *D'Antonio*, 274 Conn. 658, 669, 877 A.2d 696 (2005).

"The plain error doctrine is not . . . a rule of review-ability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial pro-ceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Smith*, 275 Conn. 205, 239–40, 881 A.2d 160 (2005).

At the outset, we note that as "a minister of justice" a "trial judge should be cautious and circumspect in his language and conduct" and should conduct a trial in an atmosphere of impartiality. (Internal quotation marks omitted.) *Cameron* v. *Cameron*, 187 Conn. 163, 169, 444 A.2d 915 (1982). Nonetheless, reversal is not required when "the record demonstrates that [a] defen-dant . . . has received a fair trial and sentencing before an impartial court, and that the core danger of judicial vindictiveness has not been realized." *State* v. *D'Antonio*, supra, 274 Conn. 691–92.

The defendant contends that by permitting the with-drawal of defense counsel, the trial judge thereafter was required to recuse herself or declare a mistrial. We disagree. The trial judge's decision granting the motion for withdrawal is not indicative of the trial judge's implicit acknowledgment as to the prevalence of bias that would warrant judicial recusal sua sponte. To the contrary, the record reveals that the trial judge allowed the defense counsel to withdraw because counsel had expressed *his* belief that *he* could not represent the

defendant effectively in the postconviction proceedings. Specifically, counsel believed that he could not remain dispassionate because he was offended and distressed by the actions of the defendant's girlfriend and of the defendant's mother, who had accused the court and counsel of conducting a legal lynching of the defendant. In contrast, the trial judge clearly expressed her belief that her objectivity had not been compromised by the actions of the defendant's mother, and she was aware, from the defendant's testimony in the hearings conducted after the finding of guilt, that the defendant did not write or support the allegations contained in the accusatory letters.

The defendant also points to several statements made by the trial judge, which he alleges created an appearance of judicial partiality. Although we agree with the defendant that the trial judge made several comments that demonstrate a temporary lack of circumspection after she was compared to a lynch mob, not every human reaction of this kind or brief departure from the norm constitutes grounds for reversal.[8] As Justice T. Clark Hull once observed while sitting as a judge on this court, "a judge is a human being, not the type of unfeeling robot some would expect the judge to be. Such a passing display of exasperation, though worsened by its repetition, falls far short of a reasonable cause for disqualification for bias or prejudice . . . ." *Keppel* v. *BaRoss Builders, Inc.*, 7 Conn. App. 435, 444, 509 A.2d 51, cert. denied, 201 Conn. 803, 513 A.2d 698 (1986).

Moreover, none of these statements was made prior to the conclusion of the presentation of evidence.

---

[8] The judge's remarks of which the defendant complains for the first time on appeal, like the trial court's participation in plea bargaining in *State* v. *D'Antonio*, supra, 274 Conn. 693 n.22, do not require per se reversal. The defendant's interest in a fair trial "is protected by appellate review of the record for actual indications that the appearance of impartiality has been *shattered*." (Emphasis added.) Id.

Indeed, the sentencing occurred fourteen months after the judge had found the defendant guilty and several months after the judge had made remarks with which the defendant takes issue. Without a doubt, the defendant had sufficient time prior to his sentencing to raise any objections stemming from the alleged appearance of judicial partiality. In fact, at the opening of the sentencing hearing, the trial judge questioned the defendant, for the record, as to whether he had filed a motion for recusal, and the defendant responded that he had not filed a motion and did not request that she recuse herself.

The defendant also fails to demonstrate how he was prejudiced or denied a fair trial. On the charge of assault of a peace officer, the trial judge imposed a sentence of three years incarceration, execution suspended after six months, followed by three years probation. However, pursuant to § 53a-167c, assaulting a peace officer constitutes a Class C felony and is subject to a maximum sentence of ten years imprisonment. See General Statutes § 53a-35a. In addition, on the two counts of interfering with an officer in violation of § 53a-167a (a), each of which carried a maximum sentence of one year, the defendant was exposed to another two years of incarceration. See General Statutes § 53a-36. The trial judge, in her discretion, imposed a sentence on those two charges of thirty days concurrent to each other and to the main sentence, instead of having the sentences run consecutively. See General Statutes § 53a-37. For the offense of reckless driving, the defendant was exposed to a maximum jail sentence of thirty days; however, the judge granted an unconditional discharge. Although the record is not a model of clarity, it appears from the state's brief and our review of the transcript that the defendant pleaded guilty to another count of interfering with an officer arising out of a second unrelated incident. On this separate charge, in which the

defendant was subject to a maximum penalty of one year imprisonment, Judge Cofield sentenced him to ninety days concurrent to his other sentence. In light of the severity of the charges against the defendant, the maximum penalties that could have been imposed and his failure to move for a mistrial or recusal, although represented at two separate hearings by two separate lawyers, we conclude that the record contains no indication that the appearance of impartiality has been shattered. See *State* v. *D'Antonio*, supra, 274 Conn. 693 n.22. The sentence that the trial judge imposed was lenient and did not indicate any animus toward the defendant, which the defendant, in fact, conceded at oral argument before this court.[9]

Thus, after a thorough review of the record, we conclude that the defendant has not established that the conduct of the trial judge created an appearance of bias affecting the fairness or integrity of the proceedings or resulting in manifest injustice to the defendant, thereby requiring the judge, sua sponte, to recuse herself or to declare a mistrial. There is no plain error.

The judgment is affirmed.

In this opinion GRUENDEL, J., concurred.

BERDON, J., dissenting. I disagree with the majority and would reverse the judgment of the trial court and remand the case for a new trial. It is clear that the trial judge should have recused herself notwithstanding the failure of the defendant, David K. Herbert, to move to do so.

I recognize that this court should "not ordinarily review on appeal a claim that a trial judge should have

---

[9] At oral argument, the following colloquy occurred:

"The Court: Is it your client's claim that the sentence imposed showed animus toward him?

"The Defendant: Not the sentence, per se."

disqualified himself . . . when no such request was made during the trial." *Cameron* v. *Cameron*, 187 Conn. 163, 168, 444 A.2d 915 (1982). There are, however, exceptions to this rule. An accusation of prejudice on the part of the trial judge, "which strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary" is one such exception. *Felix* v. *Hall-Brooke Sanitarium*, 140 Conn. 496, 501, 101 A.2d 500 (1953).

"No more elementary statement concerning the judiciary can be made than that the conduct of the trial judge must be characterized by the highest degree of impartiality. If [the trial judge] departs from this standard, he casts serious reflection upon the system of which he is a part. A judge is not an umpire in a forensic encounter. *Strong* v. *Carrier*, 116 Conn. 262, 263, 164 A. 501 [1933]. He is a minister of justice. *Peiter* v. *Degenring*, 136 Conn. 331, 338, 71 A.2d 87 [1949]. He may, of course, take all reasonable steps necessary for the orderly progress of the trial. . . . In whatever he does, however, the trial judge should be cautious and circumspect in his language and conduct." (Citations omitted.) *Felix* v. *Hall-Brooke Sanitarium*, supra, 140 Conn. 501–502. A judge "should be scrupulous to refrain from hearing matters which he feels he cannot approach in the utmost spirit of fairness and to avoid the appearance of prejudice as regards either the parties or the issues before him." *Glodenis* v. *American Brass Co.*, 118 Conn. 29, 39, 170 A. 146 (1934). "It is [the trial judge's] responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." (Internal quotation marks omitted.) *State* v. *Echols*, 170 Conn. 11, 13, 364 A.2d 225 (1975), quoting *Glasser* v. *United States*, 315 U.S. 60, 82, 62 S. Ct. 457, 86 L. Ed. 680 (1942).

"Canon [3 (c) (1)] of the Code of Judicial Conduct requires a judge to disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned. The reasonableness standard is an objective one. Thus, the question is not only whether the particular judge is, in fact, impartial but whether a reasonable person would question the judge's impartiality on the basis of all the circumstances. . . . *Even in the absence of actual bias*, a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned, because the appearance and the existence of impartiality are both essential elements of a fair exercise of judicial authority." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Webb*, 238 Conn. 389, 460–61, 680 A.2d 147 (1996), aff'd after remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000).

In the present case, the trial judge felt offended when the mother of the defendant made an accusation that her son was being legally lynched. Although the defendant stated on the record several times that he did not endorse his mother's view, the accusations obviously concerned the trial judge, who voiced those concerns to the defendant on the record.

After the defendant was convicted of several crimes, his mother sent correspondence to the attorney general of Connecticut, a congressman and to the National Association for the Advancement of Colored People, accusing the court of being involved in a legal lynching with respect to the son's conviction. The trial judge expressed great annoyance and anger about these allegations at the time the defendant was scheduled to be sentenced. She commented that although she may have known the defendant's mother because they came from the same town, which was disclosed at the beginning of the trial, any association between them dated back

many years. The trial judge stated: "And to make an allegation that somehow this court with a strong commitment to civil rights was involved in a legal lynching is enough to make me get very upset. I am not happy with these baseless, slanderous allegations, and I want you to know that. And I hope that the letter that you sent to [the attorney general] accomplishes something for you. *But I think what you have done is shot yourself in the foot.* You engaged in some very self-defeating behaviors." (Emphasis added.)

Indeed, the trial judge expressed doubt as to whether, because of her anger, she should continue with the case. Openly, she speculated: "The activity that has happened here is just totally unacceptable, and it has created some damage, and I just don't know where all the fallout is going to be. *And I really want to research my own options in terms of whether I should continue in this case because it strikes at the core of my integrity and I'm personally offended. . . .* And to the extent that you think that [the attorney general] sits as an appellate court over me, I have a problem with it." (Emphasis added.)

The trial judge, obviously realizing how upset she was, stated: "So, I'm going to continue this so that I can do this *calmly* and *fairly.* Because your rights are important to me. What happens to you sends a message to the community. I can't expect the community to support a court system that they do not believe in." (Emphasis added.)

On September 2, 2004, six months later, the trial judge continued to demonstrate her anger, not only at the mother but with the defendant. The trial judge stated: "Although I did take personal affront to the letter, that I do not hold against you, Mr. Herbert, indicating that the court had been involved in a legal lynching, since the mother is from the small town in North Carolina

that I'm from, she would know that I grew up in the segregated style where a lynching is not to be taken figuratively, but literally; and having grown up under that system, it has been this court's objective since becoming a lawyer and while studying the ministry [for] two years in the school of divinity in Yale [University] to see that justice is done.

"So, that this court is now accused of being a part of a legal lynching is certainly disturbing to the court. I don't think that this court's reputation would support those allegations."

When, as in the present case, the trial judge takes substantial personal offense at the comments made by another regarding the case on which the judge is presiding and makes those feelings public, the judge is required to recuse herself. "The standard to be employed is an objective one, not the judge's subjective view as to whether he or she can be fair and impartial in hearing the case. . . . Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification." (Internal quotation marks omitted.) *State* v. *Martin*, 77 Conn. App. 778, 785, 825 A.2d 835, cert. denied, 266 Conn. 906, 832 A.2d 73 (2003).

The majority finally argues that the "lenient" sentence imposed by the trial judge camouflages any impropriety of failing to recuse herself because it "did not indicate any animus toward the defendant . . . ." Whether or not the trial judge had improper feelings of animus toward the defendant misses the point. Recusal is required not only for the protection of the defendant, but also for the public perception of justice "because the appearance and the existence of impartiality are both essential elements of a fair exercise of judicial

authority." *State* v. *Webb*, supra, 238 Conn. 461. Nevertheless, in light of the admission by the state that "at no time did [the defendant] attempt to strike or kick the officer[s]," an effective sentence of three years incarceration, execution suspended after six months, with three years probation, was not a lenient sentence for a defendant who had no criminal record, supported his family and was an honors student in college.

Accordingly, I dissent.