## STATE OF CONNECTICUT *v.* JAMES R.*
## (AC 32802)

Lavine, Espinosa and West, Js.

---

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued March 14—officially released September 18, 2012

*Brian J. Woolf*, with whom were *Kathleen E. Rallo* and, on the brief, *Michael A. Roussos*, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *David A. Gulick*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ESPINOSA, J. The defendant, James R., appeals from the judgment of conviction, rendered following a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), kidnapping in the second degree in violation of General Statutes § 53a-94 (a), burglary in the second degree in violation of General Statutes § 53a-102 (a) and risk of injury to a child in

violation of General Statutes § 53-21 (a) (1).[1] The defendant claims that (1) prosecutorial impropriety deprived him of a fair trial and (2) the trial court demonstrated judicial bias in the state's favor, thereby depriving him of a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Prior to the events at issue in this appeal, the female victim had resided with her mother and the defendant, her stepfather, in Waterbury. In 2007, the victim moved out of the residence and began living in another residence in Waterbury. The victim did not speak with her mother after moving out of her mother's residence, but the defendant routinely visited the victim at her new residence. The victim gave birth to a daughter in 2008.

On October 1, 2008, the victim was in her bedroom with a male friend when the defendant entered her apartment and stood in the bedroom doorway. The defendant stated, "I was fit to scare your ass," and, "I would have got you." After the victim walked the defendant to his automobile, the defendant asked the victim questions about people who might be staying at her house and when they would be at her house.

On October 2, 2008, the victim was home, lying on her bed with her seven month old daughter, and watching television. At approximately 9 a.m., the defendant, wearing a black mask, a black shirt, dark pants and gloves, appeared in the victim's bedroom. The defendant was holding a sofa cushion. He lunged on top of the victim and her daughter and held the sofa cushion over the victim's head. When the victim started to scream, the defendant threatened to kill her daughter.

[1] The court imposed a total effective sentence of forty-four years imprisonment, suspended after thirty-four years, followed by fifteen years of probation.

The defendant bound the victim's hands with black electrical tape, put a blanket over her head and undressed her from the waist down. The defendant fondled the victim's breasts and inserted his penis into her vagina for a brief period of time before he was startled by a noise from a neighboring residence. The defendant placed a heavier blanket over the victim's head and carried her to the kitchen, where he restrained her to a chair. The defendant exited the residence, after which time the victim broke free from the chair and obtained assistance from a neighbor. Members of the Waterbury police department arrived on the scene by 9:22 a.m.

By approximately 10:20 a.m., David Sheehan, a police sergeant, was at the defendant's residence after having interviewed the victim. The defendant told Sheehan that he had been home all morning. The defendant voluntarily accompanied a police officer to police headquarters, where he was interviewed by Jorge Tirado, a detective. Initially, the defendant told Tirado that he had been home all morning because his wife asked him to perform work on their house. Later, the defendant's wife told Tirado that she expected that the defendant would be at work that day. When Tirado confronted the defendant with evidence that police officers, upon arriving at the defendant's residence, had observed that the hood of his automobile was very warm to the touch, strongly suggesting that the vehicle had been driven shortly prior to their arrival, the defendant stated that he had moved his automobile from his driveway at approximately 5 a.m., so that his wife could drive her automobile to work. The defendant's wife told Tirado that this was not accurate because her automobile was not parked in the driveway that morning.

Upon further questioning, the defendant told Tirado that he had, in fact, left his residence earlier that morning to purchase cigarettes at a convenience store, a

statement that was not supported by a review of the store's surveillance video. Initially, the defendant stated that he had not had any contact with the victim for months, but he then admitted that he had visited the victim at her residence just days earlier.

After the defendant refused to consent to a search of his automobile, the police obtained and executed a warrant to search the automobile. The search yielded a black ski mask, a pair of gloves and a bag containing a receipt from a hardware store that was located less than one half of a mile from the victim's residence. These items were stashed under the driver's seat of the automobile. The gloves and ski mask bore stains that, within a reasonable degree of scientific certainty, matched the composition of a skin tanning product that the victim had on her body at the time of the sexual assault. DNA testing of one of the gloves seized from the defendant's automobile revealed that the victim was a likely contributor to DNA taken from the glove. The receipt found in the automobile was for a pair of gloves that had been purchased less than one-half hour prior to the invasion of the victim's residence. Police later discovered a roll of black electrical tape in the defendant's residence. Subsequent analysis of the tape revealed that, within a reasonable degree of scientific certainty, the tape used to bind the victim was taken from the roll of tape discovered at the defendant's residence.

Following the search, Tirado asked the defendant if he went to the hardware store that morning. The defendant replied that he had not gone to the store that morning. After Tirado confronted the defendant with the evidence of the store receipt, the defendant stated that he had overlooked the fact that he went to the store that morning to purchase paint. When Tirado specifically asked the defendant if he had purchased gloves at the store, the defendant stated that, earlier, he forgot

to mention the purchase of the gloves because he purchased the gloves after he purchased the paint.

The defendant's conviction followed a trial before a jury. This appeal followed. Additional facts will be set forth as necessary.

## I

### PROSECUTORIAL IMPROPRIETY

First, the defendant claims that, on more than seventy occasions throughout the trial, prosecutorial impropriety occurred that deprived him of a fair trial. Several portions of the defendant's claim border on being unreviewable, for they consist of little more than references to trial transcripts followed by isolated words and phrases quoted from the trial transcripts. Although the defendant's brief is replete with such transcript citations as well as boilerplate concerning various types of prosecutorial impropriety, in many instances it lacks a thorough analysis. Conclusory labels are not a substitute for sound legal analysis. See *State* v. *T.R.D.*, 286 Conn. 191, 213 n.18, 942 A.2d 1000 (2008) ("We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." [Internal quotation marks omitted.]). Notwithstanding the cursory analysis that accompanies many of the alleged instances of impropriety, we have reviewed the entire claim. We will discuss in detail only those aspects of the claim that, in our assessment, warrant a more thorough discussion.

Before analyzing the alleged impropriety, we observe that the defendant did not object to most of the alleged impropriety at issue in this claim. The claim is reviewable on appeal, however, without resort to an extraordinary level of review. See *State* v. *Fauci*, 282 Conn. 23,

33, 917 A.2d 978 (2007); *State* v. *Warholic*, 278 Conn. 354, 360, 897 A.2d 569 (2006). "In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. . . . In other words, an impropriety is an impropriety, regardless of its ultimate effect on the fairness of the trial. Whether that impropriety was harmful and thus caused or contributed to a due process violation involves a separate and distinct inquiry. . . .

"[O]ur determination of whether any improper conduct by the state's attorney violated the defendant's fair trial rights is predicated on the factors set forth in *State* v. *Williams*, [204 Conn. 523, 540, 529 A.2d 653 (1987)], with due consideration of whether that misconduct was objected to at trial. . . . These factors include: the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted; internal quotation marks omitted.) *State* v. *Payne*, 303 Conn. 538, 560–61, 34 A.3d 370 (2012).

## A

First, the defendant claims that, at several points during the presentation of evidence, the prosecutor improperly expressed his opinion concerning the credibility of witnesses. "[A]s a general rule, prosecutors should not express their personal opinions about the guilt of the defendant, credibility of witnesses or evidence. . . . Our jurisprudence instructs [however] that

a prosecutor may comment on a witness' motivation to be truthful or to lie." (Citation omitted; internal quotation marks omitted.) *State* v. *Skidd,* 104 Conn. App. 46, 66, 932 A.2d 416 (2007).

The defendant draws our attention to the state's cross-examination of the victim's sister, J, who is the defendant's stepdaughter. During the questioning, the prosecutor questioned the witness about her motivation in testifying for the defendant. After the witness stated that she was testifying truthfully, the prosecutor remarked: "We've seen that, obviously, when I presented the evidence to you," and then followed with a question. The state acknowledges, and we agree, that the prosecutor's comment was improper. Cross-examination did not afford the prosecutor an opportunity to comment on the witness' testimony, and the prosecutor's comment, sarcastic in nature, reasonably could have been interpreted as a derisive comment about the witness' testimony.

Additionally, the defendant refers to the defendant's examination of Kevin McCall, who testified that he believed that he resided with the victim prior to October 2, 2008, and that he resided with the victim for four to six months. During an objection, the prosecutor stated that the witness' memory was not clear. We disagree that the challenged statement constituted an improper comment on the credibility of the witness. The ground of the objection was that an inquiry by the defendant should not be permitted because the witness had not testified clearly with regard to relevant dates. Our review of the testimony that preceded the colloquy reveals that the witness had not testified clearly with respect to when the relevant observations at issue had occurred. Considered in its context, the objection was not an improper comment on the credibility of the witness.

Next, the defendant focuses on the testimony of Christopher Caviness, a boyfriend of one of the victim's sisters, who testified about his observations of the victim being intoxicated and dancing at the defendant's home on Christmas, 2009. During his cross-examination by the state, Caviness testified that he was testifying because of his belief in the defendant's innocence. Thereafter, the prosecutor confronted Caviness with some of the state's tangible physical evidence, specifically, the gloves found under the front seat of the defendant's automobile. When he was asked to comment on this evidence, Caviness shifted blame to the police. The prosecutor responded, *"Oh, it's the police's fault. . . .* Police's fault. What if [the victim's] makeup was on [the gloves], police's fault again?"* (Emphasis added.)

We disagree that the challenged portion of the prosecutor's inquiry constituted an improper comment on the witness' credibility. The statement was a means of restating the witness' view of the facts. A prosecutor may not comment on a witness' credibility but may challenge vigorously by means of cross-examination the testimony of any witness. Our case law counsels that not every use of rhetorical devices by the prosecutor is improper. *State* v. *Ancona,* 270 Conn. 568, 594, 854 A.2d 718 (2004), cert. denied, 543 U.S. 1055, 125 S. Ct. 921, 160 L. Ed. 2d 780 (2005).

The defendant argues that, five times during the state's cross-examination of defense witnesses, the prosecutor definitively asserted that the victim's DNA was identified on the gloves that the police found in the defendant's automobile. The defendant claims that these assertions by the prosecutor were an impermissible means of indirectly bolstering the testimony of state's witnesses who testified about the DNA evidence found on the gloves, a disputed question of fact. Having reviewed these instances, we disagree that they were an impermissible means of suggesting that the state's

witnesses had testified truthfully. Rather, the prosecutor's questions were based on evidence in the state's case. The prosecutor properly questioned defense witnesses about such evidence.

B

Next, the defendant claims that, during the presentation of evidence, the prosecutor expressed an opinion as to his guilt, disparaged his character on multiple occasions and commented negatively on his credibility. It is well established that a prosecutor may not "express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position." (Internal quotation marks omitted.) *State* v. *Gibson*, 302 Conn. 653, 660, 31 A.3d 346 (2011). Furthermore, "a prosecutor should avoid arguments which are calculated to influence the passions or prejudices of the jury, or which would have the effect of diverting the jury's attention from their duty to decide the case on the evidence. . . . It is no part of a [prosecutor's] duty, and it is not his right, to stigmatize a defendant." (Internal quotation marks omitted.) *State* v. *Couture*, 194 Conn. 530, 562, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985).

The defendant relies on a question the prosecutor asked of S, who is the victim's sister and the defendant's stepdaughter. S testified that she appeared in court because she believed in the defendant's innocence. The prosecutor responded by asking S about some of the state's evidence, specifically, the gloves found in the defendant's automobile. After S testified that she was not satisfied with the proof presented, the prosecutor asked: "So, once again, we're here today for a man who pays your bills and lets you live [at his residence] free,

*and you're just going to sit there with all that . . . I just told you and say that you still think he didn't do it?"* (Emphasis added.)

This question was a means of challenging the witness' testimony. This is not a circumstance in which a prosecutor expressed a personal opinion, apart from the evidence, of a defendant's guilt. The prosecutor, referring to specific evidence, merely challenged the witness' belief in the defendant's innocence. The inquiry was not improper.

The defendant also relies on a question that the prosecutor asked of him during cross-examination. The defendant testified that he purchased the gloves found in his automobile from a hardware store. He testified that, after making an initial purchase of paint in the store, he went back inside and bought the gloves. The prosecutor asked: *"[I]sn't it true that [when] you walked out [the store] after buying paint that day, you knew you were going over [to the victim's residence] to do this and you went back in and bought the gloves for that reason?"* (Emphasis added.)

We are not persuaded that the inquiry was improper. This was not, as is suggested by the defendant, an instance of the prosecutor injecting a personal opinion that the defendant was guilty. The prosecutor merely asked a leading question of the defendant that was consistent with the evidence and the state's theory of the case. Such inquiry was not improper.

The defendant also refers to questions that the prosecutor asked the defendant's wife concerning his relationship with the victim. The defendant's wife testified during her direct examination that she was aware of the fact that occasionally the defendant visited the victim at the victim's residence. The prosecutor asked the defendant's wife what her reaction would be if she learned that the defendant visited the victim more than she

expected. The prosecutor asked the defendant's wife what her reaction would be if she learned that the defendant had "lied" to her about his whereabouts when he was with the victim, or whether it would cause her to ask, "[w]hy would [the defendant] be there or if he was there and not doing anything wrong, why wouldn't he just tell you?"

The inquiry was not a means of disparaging the defendant's character. The inquiry was a means of confronting the witness with circumstances that were not hypothetical, but based on the evidence presented in the state's case. The prosecutor did not argue, apart from the evidence, that the defendant was a liar. Rather, he asked the witness what her reaction would be if she learned that the defendant had lied about his whereabouts on the day prior to the sexual assault of the victim. In light of the fact that the inquiry was supported by the evidence, the inquiry was not improper.

During the defendant's cross-examination, the prosecutor asked the defendant to explain his testimony that, at the time that the police arrived at his house, the automobiles at his house were wet with precipitation, but his house was not wet with precipitation. During the colloquy, the defendant stated that he knew that the house was not wet and that he knew a police officer observed him painting the house. Twice, the prosecutor stated, "Of course you do." Following an objection by defense counsel, the court struck the prosecutor's comments as being "editorial" in nature. We review these comments in their context, a vigorous cross-examination. Nonetheless, as the state acknowledges, it was improper for the prosecutor to inject such commentary during cross-examination of a witness.

The defendant also refers to two other inquiries that, he argues, demonstrate that the prosecutor commented

negatively on his credibility and character. Having carefully reviewed the questions at issue, we are persuaded that they were properly based on the evidence and the state's theory of the case. As stated previously, the state was not precluded from questioning witnesses about the evidence in the state's case or from vigorously confronting witnesses, including the defendant, in an attempt to discredit their testimony.

## C

The defendant claims that, twelve times during closing arguments, the prosecutor expressed his personal opinion about the credibility of several witnesses. As stated in part I A of this opinion, such type of commentary is improper.

We carefully have reviewed the words and phrases upon which the defendant has based this aspect of his claim. Given the weakness in the defendant's claim, it would not serve a useful purpose to analyze in detail each aspect of it. Each instance of claimed impropriety did not reflect a personal opinion but was based on the evidence presented and the state's theory of the case. The inquiries were not improper.

## D

Next, the defendant claims that, on ten occasions during closing arguments, the prosecutor expressed his personal opinion that the defendant was guilty. As stated in part I B of this opinion, such type of commentary is improper.

We carefully have reviewed the alleged instances of impropriety. The statements made by the prosecutor did not suggest a belief in the defendant's guilt that was personal in nature, meaning *apart from a rational view of the evidence*. Rather, the statements were based on a belief in guilt that was wholly connected to the evidence presented at trial. As this court has observed, "[t]he

prosecutor was not precluded from interpreting the evidence elicited consistent with a finding of guilt." *State* v. *David O.*, 104 Conn. App. 722, 734 n.5, 937 A.2d 56 (2007), cert. denied, 285 Conn. 915, 943 A.2d 473 (2008).

## E

The defendant claims that, on three occasions during closing arguments, the prosecutor referred to prejudicial information that was outside of the evidence presented at trial. "Our Supreme Court frequently has stressed the importance of restricting comments made during closing arguments to matters related to the evidence before the jury. While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, *it must never be used as a license to state, or to comment upon, or even to suggest an inference from, facts not in evidence, or to present matters which the jury [has] no right to consider.*" (Emphasis in original; internal quotation marks omitted.) *State* v. *Gamble*, 119 Conn. App. 287, 302, 987 A.2d 1049, cert. denied, 295 Conn. 915, 990 A.2d 867 (2010).

The defendant relies on an argument made by the prosecutor in which he referred to the fact that the defendant was at the victim's residence on the day prior to the alleged sexual assault and that he did not reveal this fact to the police when he was questioned. The victim testified that, on October 1, 2008, the day before the alleged assault, the defendant snuck into her apartment and came upon her and a male friend who were playfully "wrestling" on her bed. The victim testified that the defendant entered her residence unannounced and appeared in the doorway of her bedroom, after which time he said, "I was fit to scare your ass." After the victim escorted the defendant out of her residence and to his automobile, the defendant asked the victim several questions about visitors to her residence. During

argument, the prosecutor stated: "Remember the circumstances, they're in [the bedroom], wrestling around, look up, and there he is, standing in the room again, in the doorway. Did he plan on possibly doing something the day before? *Was he doing a little recon mission,* trying to figure out the layout of the land? Was he going in there to see who's hanging around her house? No one knows what's in his mind." (Emphasis added.) Later, the prosecutor reiterated this line of argument, questioning the purpose of the defendant's presence at the victim's residence: "Again, *was that a recon mission,* was that maybe the day he was going to do it?" (Emphasis added.)

We readily conclude that the challenged argument was not improper. There was ample evidence concerning the defendant's unannounced appearance at the victim's residence on the day prior to the alleged assault. It was not unreasonable for the prosecutor to invite the jury to infer that the defendant's conduct in this regard not only was suspicious but that it was evidence of his gathering information to facilitate the assault that occurred the very next day. Accordingly, we conclude that the rhetorical questions at issue were based on the evidence and the inferences reasonably drawn therefrom.

During closing argument, the defendant's attorney argued that it was improbable that the defendant purchased paint and gloves at the hardware store, which was located one-quarter to one-half mile from the victim's residence, and then did not arrive at the victim's residence until nearly one-half hour later. The defendant's attorney opined that it was more reasonable to conclude that the defendant merely went home, as he testified, after he purchased the gloves. The state's theory of the case, supported by the evidence, was that the defendant purchased the gloves at 8:34 a.m. and that the alleged sexual assault did not occur until

approximately 9 a.m. Also, there was evidence that Donald Simpson, a friend of the victim, briefly visited with the victim at her residence sometime between 8:30 and 9 a.m. Simpson testified that he stopped by the residence unexpectedly on his way to work to talk to the victim and that, if he was not at work by 9:15 a.m., he would be considered late for work. He spoke with the victim for less than five minutes while she was on an enclosed porch in front of her residence. He testified that he did not observe an automobile matching the description of the defendant's automobile, let alone any suspicious activity in the area.

Responding to the defense argument, the prosecutor argued: "Mr. Simpson said he was in a rush. He didn't look around to see who was there. [The defendant] could have been sitting there while Simpson's car was in the front of the house, watch him walk up the stairs and walk down the stairs. *He could have been sitting there planning what he was doing. Who knows what goes through someone's head before they commit an act like this.* Improbable, no. My opinion, you can scratch that right off." (Emphasis added.)

The defendant argues on appeal that the argument was improper because "[n]o evidence suggested the defendant's presence at the scene, prior to the commission of the crime, on the date in question." We disagree that the argument was not based on the evidence and the reasonable inferences to be drawn from the evidence. In light of the evidence presented by the state that the defendant was at a hardware store at approximately 8:30 a.m. and at the victim's residence at 9 a.m., it was not unreasonable for the prosecutor to suggest that the defendant could have been parked in the vicinity of the victim's residence at some time prior to 9 a.m., planning his criminal conduct. A careful review of the argument reveals that the prosecutor did not

suggest that there was evidence of the defendant's presence in front of the residence but only that such an occurrence was possible. Nothing about this argument was improper.

F

The defendant argues that, on five separate occasions, the prosecutor improperly questioned defense witnesses about his guilt or innocence and improperly injected his personal opinion by asserting, during questioning of defense witnesses, that the victim's DNA was found on the gloves stashed under the driver's seat of the defendant's automobile. We disagree that the inquiries were improper.

It is well settled that "[n]o witness, lay or expert, may testify to his opinion as to the guilt of a defendant, whether by direct statement or inference." (Internal quotation marks omitted.) *State* v. *Fuller*, 56 Conn. App. 592, 619, 744 A.2d 931, cert. denied, 252 Conn. 949, 748 A.2d 298, cert. denied, 531 U.S. 911, 121 S. Ct. 262, 148 L. Ed. 2d 190 (2000). As stated previously, a prosecutor must refrain from injecting personal opinion into his or her appraisal of the evidence but may, nonetheless, suggest reasonable inferences from the facts in evidence. See *State* v. *Gamble*, supra, 119 Conn. App. 302.

Our review of the record reveals that the inquiries of which the defendant complains were not an attempt to elicit an opinion from the witnesses as to the defendant's guilt or innocence. Rather, they were an attempt to confront defense witnesses with the physical evidence presented by the state. Additionally, although it remained the exclusive province of the jury to determine whether the defendant's DNA was found on the gloves, it did not invade the jury's fact-finding function for the prosecutor to state, in the form of hypothetical questions asked of defense witnesses, that the defendant's DNA was found on the gloves. In so doing, the

prosecutor merely asked questions consistent with the state's theory of the case and a reasonable interpretation of the evidence presented at trial, albeit one consistent with a finding of guilt.

### G

Next, the defendant claims that the prosecutor improperly encouraged the members of the jury to identify with the victim. "A prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal. . . . Similarly, a prosecutor should not inject extraneous issues into the case that divert the jury from its duty to decide the case on the evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Warholic*, supra, 278 Conn. 376. We disagree that the challenged conduct was improper.

Absent objection during the state's case-in-chief, the prosecutor presented the recorded 911 call that a bystander who encountered the victim immediately after the sexual assault made to the police. The prosecutor played the recording for the jury both during the presentation of evidence and during closing arguments. Also, in argument, the prosecutor characterized the victim's emotional state in the recorded conversation as "hysterical" and noted that during the conversation the victim was "screaming."

The defendant claims that the prosecutor engaged in improper conduct by playing the recording before the jury and by so characterizing the victim's emotional state. The defendant asserts that, in light of the fact that he did not contest that a sexual assault of the victim had occurred, the very introduction of this evidence did not serve any proper purpose at trial.

As a preliminary matter, we observe that the defendant has not raised an evidentiary claim in this appeal. The defendant did not object to the admission of the 911 recording, and this prosecutorial impropriety claim does not afford him an opportunity to obtain review of an unpreserved evidentiary claim. Insofar as the claim is rooted in prosecutorial impropriety, it has no merit. As we have stated previously, the prosecutor had a right to comment fairly on the evidence presented at trial. Thus, the prosecutor acted properly in characterizing the 911 recording and by relying on this evidence during his presentation of the evidence and his argument before the jury. Contrary to the defendant's assertions, the defendant has not demonstrated that the prosecutor, in playing the 911 recording or discussing the evidence, appealed to the jury's emotions or invited the jury to identify with the victim.

## H

Finally, the defendant claims that, throughout the state's examination of Tirado, the prosecutor improperly encouraged the witness to opine that the defendant was guilty, bolstered the witness' testimony, commented on the defendant's veracity, alluded to the defendant's guilt and elicited testimony that tended to portray the defendant in an incriminating light.

After reviewing the numerous allegations of impropriety, we conclude that no impropriety occurred. The defendant's claim amounts to a careful dissection of words and phrases used by the prosecutor and the witness in an attempt to transmute proper questions of the witness into instances of impropriety. It suffices to observe that the prosecutor was not precluded from asking questions that tended to portray the defendant in a negative light, tended to reveal his implication in the criminal activity with which he was charged and were consistent with the state's theory of the case as

demonstrated by the evidence. The inquiries did not take the form of personal opinion because they were inquiries that were based on the evidence and the rational inferences drawn therefrom, nor did they invite the witness to comment directly on the defendant's guilt.

I

As discussed in parts I A and B of this opinion, the prosecutor engaged in two instances of impropriety during trial: one occurring during the cross-examination of the victim's sister, J, and another occurring during the cross-examination of the defendant. Having identified impropriety, we undertake an analysis under *State* v. *Williams*, supra, 204 Conn. 540, to determine whether it deprived the defendant of a fair trial.

First, the impropriety was not invited by defense conduct or argument; it consisted of the prosecutor's comments during his cross-examination of defense witnesses. Second, although the comments during cross-examination were improper, the instances of impropriety were not severe. Both instances of impropriety were similar in that they consist of editorial comments of a sarcastic nature that reasonably could be viewed as having called into doubt the witness' testimony. The comments did not directly disparage the witnesses or their testimony. Third, the impropriety was infrequent, occurring once during the cross-examination of J and once during the cross-examination of the defendant. Certainly, the impropriety was by no means a pervasive element of the trial. Fourth, the impropriety was not central to the critical issues in the case. Fifth, following a defense objection, the court struck the prosecutor's comments during the cross-examination of the defendant and reminded counsel to "play by the rules." In light of the fact that the impropriety at issue was isolated and not severe in nature, this

curative measure was sufficiently strong and appropriate. Because the defendant did not object to the impropriety that occurred during the cross-examination of J, the court did not take any curative measures with regard to that conduct. Finally, the state presented a very strong case against the defendant, one that included the victim's testimony, physical evidence and strong circumstantial evidence.

Having considered the two instances of impropriety in light of the *Williams* factors, we are not persuaded that the impropriety deprived the defendant of a fair trial. The impropriety was infrequent and was not severe in nature, and the state presented a very strong case against the defendant. The defendant urges us to view cumulatively the claimed instances of impropriety in determining whether he was deprived of a fair trial. Whether viewed individually or cumulatively, the claimed instances of impropriety did not give rise to a constitutional violation.

## II

## JUDICIAL BIAS

Second, the defendant raises an unpreserved claim of judicial bias. This claim focuses on numerous actions of the trial court throughout the trial. The defendant alleges that the court appeared to collaborate with the state, appeared to adopt a position of advocacy in favor of the state and failed to maintain an impartial atmosphere during the trial. Specifically, the defendant asserts that the court appeared to demonstrate bias in that it, inter alia, (1) used words and phrases in responding to multiple objections raised by the state that "suggest[ed]" its deference to the state's position; (2) "engaged in actions potentially suggesting an adoption of a position of advocacy";[2] (3) showed "seeming

---

[2] By way of example, the defendant points out that, in response to an objection made by the state on relevancy grounds, the court replied, "I would join in that." After hearing from the defendant's attorney, however,

periodic deference" to the state in ruling on various evidentiary matters; and (4) failed to prevent sua sponte the prosecutor from engaging in the improper conduct addressed in part I of this opinion.

"It is well settled that courts [generally] will not review a claim of judicial bias on appeal unless that claim was properly presented to the trial court through a motion for disqualification or a motion for a mistrial. . . . We have repeatedly indicated our disfavor with the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, with the assignment of such errors as grounds of appeal. . . . However, because a claim of the appearance of judicial bias strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary . . . we nonetheless have reviewed unpreserved claims of judicial bias under the plain error doctrine." (Citations omitted; internal quotation marks omitted.) *State* v. *Herbert*, 99 Conn. App. 63, 68, 913 A.2d 443, cert. denied, 281 Conn. 917, 917 A.2d 999 (2007).

The defendant does not argue that plain error exists and, thus, we do not engage in plain error review. See *State* v. *McKenzie-Adams*, 281 Conn. 486, 533 n.23, 915 A.2d 822, cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007), overruled in part on other grounds by *State* v. *Payne*, 303 Conn. 538, 548, 34 A.3d 370 (2012). Instead, the defendant seeks review of his unpreserved claim under the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). This request is flawed on several grounds.

the court overruled the state's objection. The defendant also relies on the fact that, on several occasions during the defendant's testimony, the court asked the defendant to respond only to the questions posed to him by counsel.

As a preliminary matter, insofar as the claim is based on "the trial court's actions pertaining to extensive prosecutorial misconduct," the claim is not supported by the record and is, thus, without merit. We already have concluded in part I of this opinion that prosecutorial impropriety sufficient to deprive the defendant of a fair trial did not occur. The impropriety in this case was not extensive, as the defendant argues, but was infrequent and not severe. Furthermore, the record reflects that the court immediately took appropriate corrective measures following the defendant's objection to one of the two improper comments made by the prosecutor. Insofar as the claim is based largely on the propriety of several of the court's evidentiary rulings, the claim is not reviewable under *Golding* because such aspects of the claim are purely evidentiary in nature, brought before this court in the guise of a due process claim. *Golding* review does not afford an opportunity to relitigate each and every adverse ruling that was made at trial; it is an extraordinary remedy reserved for unpreserved constitutional violations. Last, insofar as the claim is based on various statements made by the court during the course of the trial, the claim essentially is that the court *appeared to be partial.* We conclude that these aspects of the claim are not reviewable under *Golding* because they are not constitutional in nature. See *State* v. *D'Antonio,* 274 Conn. 658, 669, 877 A.2d 696 (2005) (claim of judicial bias based on appearance of partiality in plea bargaining negotiations not reviewable under *Golding* because it is not constitutional in nature); *State* v. *Herbert,* supra, 99 Conn. App. 68 n.7 ("[t]he defendant's claim of judicial bias based solely upon the *appearance* of partiality, does not rise to the level of a constitutional violation" [emphasis in original; internal quotation marks omitted]).

The judgment is affirmed.

In this opinion the other judges concurred.