******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* HUDEL
CLIFTON GAMBLE
(AC 43117)

Prescott, Clark and DiPentima, Js.

*Syllabus*

Convicted of the crime of manslaughter in the first degree with a firearm,
the defendant appealed from the trial court's dismissal of his motion
to correct an illegal sentence. The defendant was charged with, inter
alia, murder, and, at trial, the state presented evidence that the defendant
and his accomplices each fired a gun at the victim. At the state's request,
the judge charged the jury on all of the elements of the lesser included
offense of manslaughter in the first degree with a firearm. At the hearing
on the motion to correct, the defendant acknowledged that he was
challenging his sentence solely on the basis of what he contended was
an unconstitutional conviction of manslaughter in the first degree with
a firearm. The court dismissed the motion for lack of jurisdiction on
the ground that the defendant was attacking his conviction, not the
sentence he received or the manner in which the sentence was imposed.
On appeal, the defendant claimed that there was a colorable claim that
his sentence on the underlying conviction of manslaughter in the first
degree with a firearm was illegally enhanced on the basis of a fact not
found by the jury. *Held* that the trial court did not err in dismissing the
defendant's motion to correct for lack of jurisdiction, as the defendant
challenged what transpired at trial, not at sentencing, and his claim
presupposed an invalid conviction; the jury was instructed on all of the
elements of the offense for which the defendant was convicted and
sentenced, including the element of using a firearm, and the jury, not
the judge, found the defendant guilty of that offense; moreover, to
the extent that the defendant argued that the court misled the jury or
incorrectly accepted its verdict, his arguments attacked his underlying
conviction, not his sentence, and despite the defendant's claim that the
firearm element that enhanced his manslaughter conviction was never
proven to the jury, the record sufficiently demonstrated that the state
presented evidence that the defendant used a gun to shoot at the victim.

Argued April 19—officially released August 24, 2021

*Procedural History*

Substitute information charging the defendant with
the crimes of murder, conspiracy to commit murder, pos-
session of an assault weapon and conspiracy to possess
an assault weapon, brought to the Superior Court in the
judicial district of New Haven and tried to the jury before
*Holden, J.*; verdict and judgment of guilty of the lesser
included offense of manslaughter in the first degree with
a firearm as an accessory; thereafter, the court, *Clifford,
J.*, dismissed the defendant's motion to correct an illegal
sentence, and the defendant appealed to this court.
*Affirmed.*

*Hudel Clifton Gamble*, self-represented, the appellant
(defendant).

*Thai Chhay*, deputy assistant state's attorney, with
whom, on the brief, were *Ronald G. Weller*, senior assis-
tant state's attorney, *Patrick Griffin*, state's attorney,
and *Reed Durham*, assistant state's attorney, for the
appellee (state).

*Opinion*

CLARK, J. For a trial court to have jurisdiction over a defendant's motion to correct an alleged illegal sentence, the defendant must raise "a colorable claim within the scope of Practice Book § 43-22[1] that would, if the merits of the claim were reached and decided in the defendant's favor, require correction of a sentence. . . . In the absence of a colorable claim requiring correction, the trial court has no jurisdiction to modify the sentence." (Footnote added; internal quotation marks omitted.) *State* v. *Evans*, 329 Conn. 770, 783, 189 A.3d 1184 (2018), cert. denied,      U.S.     , 139 S. Ct. 1304, 203 L. Ed. 2d 425 (2019). "A colorable claim is one that is superficially well founded but that may ultimately be deemed invalid. . . . For a claim to be colorable, the defendant need not convince the trial court that he necessarily will prevail, he must demonstrate simply that he might prevail. . . . The jurisdictional and merits inquiries are separate, whether the defendant ultimately succeeds on the merits of his claim does not affect the trial court's jurisdiction to hear it." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 784.

In the present case, the self-represented defendant, Hudel Clifton Gamble, appeals from the judgment of the trial court dismissing his motion to correct an alleged illegal sentence (motion to correct) for lack of jurisdiction. On appeal, the defendant claims that the court improperly dismissed the motion to correct because it advanced a colorable claim that his sentence on the underlying conviction of manslaughter in the first degree with a firearm was illegally enhanced on the basis of a fact not found by the jury. The state counters that the court properly dismissed the defendant's motion to correct because it challenges his underlying conviction, not the legality of his sentence. We agree with the state and, therefore, affirm the judgment of the trial court.

The present appeal arises out of the defendant's conviction, following a jury trial, of manslaughter in the first degree with a firearm. *State* v. *Gamble*, 119 Conn. App. 287, 987 A.2d 1049, cert. denied, 295 Conn. 915, 990 A.2d 867 (2010). The relevant facts, which the jury reasonably could have found, and procedural history were set out in this court's opinion affirming the defendant's conviction on direct appeal.[2]

On November 29, 2005, the then seventeen year old defendant gave his fifteen year old friend, Ricardo Ramos, a loaded .22 caliber gun. Id., 290. Later that day, Ramos and Daniel Smith were riding in a BMW in the "Hill" section of New Haven. Id. They picked up the defendant, who sat in the backseat while the three drove around smoking marijuana. Id. Smith was driving on Kensington Street when Ramos saw a woman with

whom he was acquainted. Id. Smith stopped the vehicle, and the woman "informed Ramos that a person with whom Ramos had a 'beef' was in the area." Id. As the three men traveled down Kensington Street a second time, "Ramos observed a person, [whom] he believed had killed his cousin approximately one month earlier . . . . As Smith drove closer, the group on the sidewalk fired gunshots at the right side of the BMW. Ramos and Smith, who were both carrying weapons, returned fire through the open windows of the BMW. The *defendant fired an SKS semiautomatic assault rifle*, the barrel of which was resting on an open car window."[3] (Emphasis added.) Id. Ramos later learned that Marquis White (victim), whom he did not know and who did not shoot his cousin, had been shot and killed on Kensington Street. Id.

The defendant was arrested and charged with various crimes, including murder.[4] Id., 292. At trial, "[o]ver the defendant's objection, the court [*Holden, J.*] granted the state's request for a jury instruction on the lesser included offense of manslaughter in the first degree with a firearm under the theories of [both] principal and accessorial liability. The court so instructed the jury.[5]

"Following deliberations, the jury reached a verdict. After the roll of jurors was called, the foreperson answered 'not guilty' as the court clerk read the following charges: murder, manslaughter in the first degree with a firearm, conspiracy to commit murder, possession of an assault weapon and conspiracy to possess an assault weapon. The court . . . accepted the verdict.

"Thereafter, the foreperson stated that '[s]omething is wrong.' The court sent the jury back to the deliberation room and informed counsel of the procedure that was to follow. The jury then returned to the courtroom, and the court asked the jury to articulate its concern in a note. The jury returned to the deliberation room and sent out a note that stated: '[W]e found [the defendant] guilty of "accessory to manslaughter" and [want] guidance. We were waiting for "accessory" to be read.' The court described the contents of the note on the record. The court stated that, as evidenced by the note, it was the jury's position that it had not been asked to provide its verdict as to manslaughter in the first degree with a firearm as an accessory. The court indicated that it would have to vacate its finding that the verdict was accepted and recorded, at least as to the manslaughter charge. The court then stated that, unless the parties had an objection, the jury would be asked to return its verdict again as to all the charges, including the lesser included offense of manslaughter in the first degree with a firearm. In an effort to ameliorate any misunderstanding, the court planned to separate the manslaughter charge into two subsets: manslaughter as previously read and manslaughter as an accessory. There was no objection.

"After the jury returned to the courtroom, the court clerk again called the jury roll and then asked for the jury's verdict as to each offense. This time, the court clerk inquired as to the offense of manslaughter in the first degree with a firearm twice: once as previously read and interpreted by the jury to encompass only liability as a principal and once as an accessory. The court clerk inquired: 'To the lesser included offense in count one, what say you to the lesser included offense of manslaughter in the first degree with a firearm in violation of [General Statutes] § 53a-55 (a) (3)[6] of the Connecticut General Statutes,' to which the foreperson responded: 'Not guilty.' The court clerk then inquired: '*For the lesser included offense in count one, what say you to the lesser included offense of manslaughter in the first degree with a firearm as an accessory in violation of the same section of the Connecticut General Statutes,' to which the foreperson responded*: '*Guilty.*'[7] The jury returned a verdict of not guilty to the remaining charges. The court . . . accepted the verdict. The defendant did not object." (Emphasis added; footnotes added.) *State* v. *Gamble*, supra, 119 Conn. App. 292–94. The court sentenced the defendant to thirty-seven and one-half years of imprisonment.[8] This court affirmed the defendant's conviction on direct appeal.[9] Id., 304.

In January, 2019, the defendant, representing himself, filed the present motion to correct, alleging that "[p]ursuant to *State* v. *Abraham*, 152 Conn. App. 709 [99 A.3d 1258 (2014)] [the] court has jurisdiction to consider the sentencing court's decision to impose a sentence enhancement under General Statutes § 53a-55a, when the jury never intended to impose that finding. Because of that failure, the defendant's sentence exceeded the permissible statutory maximum and, thus, is illegal."

In response to the motion to correct, the court, *Clifford, J.*, pursuant to *State* v. *Casiano*, 282 Conn. 614, 620, 922 A.2d 1065 (2007), appointed Attorney Kelly Billings as counsel for the defendant for the limited purpose of determining whether there was a sound basis to the motion to correct. Billings subsequently moved to withdraw as counsel. At the May 15, 2019 hearing on that motion, Billings represented that the defendant was claiming that it was error for the jury to find him guilty of accessory to commit manslaughter in the first degree with a firearm, which concerns the defendant's conviction, not his sentence. Billings explained that, although the defendant contended that the court had enhanced his conviction of manslaughter in the first degree as an accessory, the defendant had never been charged "just" as an accessory to manslaughter. Rather, the defendant initially was charged with murder and, at the state's request, Judge Holden instructed the jury on the lesser included offense of manslaughter in the first degree with a firearm. The jury

ultimately found the defendant guilty of manslaughter in the first degree with a firearm.

After hearing from Billings, the court explained to the defendant that it lacked jurisdiction over his motion to correct because courts generally lose jurisdiction over a case once a defendant is sentenced and committed to the custody of the Commissioner of Correction.[10] The defendant argued that the court had jurisdiction because he was not attacking his conviction, only his thirty-seven year sentence.[11] Specifically, the defendant claimed that there was a mistake with the "sentence enhancement" and that the court had jurisdiction pursuant to *Apprendi* v. *New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). He also argued that the court "could modify the conviction if it's only challenging the sentence."

The following colloquy transpired between the court and the defendant:

"The Court: Well, you're challenging . . . the sentence of thirty-seven years because you're saying you never should have been convicted of manslaughter in the first degree with a firearm. Right?

"[The Defendant]: Absolutely.

"The Court: Well, that's attacking the conviction.

"[The Defendant]: Well, that's permissible. On the evidence, that's permissible."

After hearing argument, and over the defendant's objection, the court granted Billings' motion to withdraw on the ground that the motion to correct lacked a sound basis. The court, nevertheless, offered the defendant a continuance to prepare for a separate hearing on the merits of his motion to correct. The defendant declined the court's invitation because he felt that the court already had indicated how it likely would rule on the jurisdictional issue. Thereafter, the court dismissed the motion to correct on the grounds that it lacked jurisdiction because the defendant's claims were "attacking the conviction, not the sentence."

On appeal, the defendant claims that the court improperly dismissed his motion to correct because it raised a colorable claim that the firearm element of manslaughter in the first degree with a firearm was not proven beyond a reasonable doubt in violation of *Apprendi* v. *New Jersey*, supra, 530 U.S. 466, and *State* v. *Evans*, supra, 329 Conn. 778. The defendant's claim fails because its premise is factually flawed, and it bears no relation, factually or procedurally, to *Apprendi* or *Evans*.

We begin with the standard of review governing jurisdictional claims. "[B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *State* v. *Alexander*, 269 Conn. 107, 112,

847 A.2d 970 (2004). "[J]urisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it." (Internal quotation marks omitted.) *State* v. *Kelley*, 164 Conn. App. 232, 237, 137 A.3d 822 (2016), aff'd, 326 Conn. 731, 167 A.3d 961 (2017).

"It is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. . . . This is so because the court loses jurisdiction over the case when the defendant is committed to the custody of the [C]ommissioner of [C]orrection and begins serving the sentence. . . . There are a limited number of circumstances in which the legislature has conferred on the trial courts continuing jurisdiction to act on their judgments after the commencement of sentence . . . . See, e.g., General Statutes §§ 53a-29 through 53a-34 (permitting trial court to modify terms of probation after sentence is imposed); General Statutes § 52-270 (granting jurisdiction to trial court to hear petition for a new trial after execution of original sentence has commenced); General Statutes § 53a-39 (allowing trial court to modify sentences of less than three years provided hearing is held and good cause shown). . . . Without a legislative or constitutional grant of continuing jurisdiction, however, the trial court lacks jurisdiction to modify its judgment." (Citations omitted; internal quotation marks omitted.) *State* v. *Lawrence*, 91 Conn. App. 765, 770–71, 882 A.2d 689 (2005), aff'd, 281 Conn. 147, 913 A.2d 428 (2007).

"Under the common law, the court has continuing jurisdiction to correct an illegal sentence. See, e.g., *Bozza* v. *United States*, 330 U.S. 160, 166, 67 S. Ct. 645, 91 L. Ed. 818 (1947) ('an excessive sentence should be corrected . . . by an appropriate amendment of the invalid sentence by the court of original jurisdiction'); *Murphy* v. *Massachusetts*, 177 U.S. 155, 157, 20 S. Ct. 639, 44 L. Ed. 714 (1900) ('in many jurisdictions it has been held that the appellate court has the power, when there has been an erroneous sentence, to remand the case to the trial court for sentence according to law'); *In re Bonner*, 151 U.S. 242, 259–60, 14 S. Ct. 323, 38 L. Ed. 149 (1894) ('where the conviction is correct . . . there does not seem to be any good reason why jurisdiction of the prisoner should not be reassumed by the court that imposed the sentence in order that its defect may be corrected')." *State* v. *Lawrence*, supra, 91 Conn. App. 772.

"In Connecticut, that grant of jurisdiction is recognized and the procedure by which it may be invoked is regulated by Practice Book § 43-22. . . . Rules of practice, however, merely regulate the procedure by which the court's jurisdiction may be invoked; they do not and cannot confer jurisdiction on the court to consider matters otherwise outside the court's jurisdic-

tion. For the court to have jurisdiction to consider the defendant's claim of an illegal sentence, the claim must fall into one of the categories of claims that, under the common law, the court has jurisdiction to review.

"Connecticut has recognized two types of circumstances in which the court has jurisdiction to review a claimed illegal sentence. The first of those is when the sentence itself is illegal, namely, when the sentence either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. . . . The other circumstance in which a claimed illegal sentence may be reviewed is that in which the sentence is within the relevant statutory limits but was imposed in a way which violates [the] defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises. . . . Both types of illegal sentence claims share the requirement that the sentencing proceeding, and not the trial leading to conviction, be the subject of the attack." (Citations omitted; footnotes omitted; internal quotation marks omitted.) Id., 773–75.

In the present case, the defendant was charged with murder and, at trial, the state presented evidence that the defendant and his accomplices each fired a gun at the victim. At the state's request, and over the defendant's objection, Judge Holden charged the jury on all of the elements of the lesser included offense of manslaughter in the first degree with a firearm. The jury found the defendant guilty of that crime beyond a reasonable doubt. At the hearing on the motion to correct before Judge Clifford, the issue was whether the defendant was attacking his conviction or his sentence. The defendant acknowledged that he was challenging his sentence solely on the basis of what he contends was an unconstitutional conviction of manslaughter in the first degree with a firearm. Judge Clifford, therefore, properly dismissed the motion to correct for lack of jurisdiction because the defendant was attacking his conviction, not the sentence he received or the manner in which the sentence was imposed.

The defendant argues that the trial court had jurisdiction to consider his motion to correct because he raised a colorable claim under both *Apprendi* and *Evans*. We disagree because neither of those cases bears any relation to the claims the defendant raised in his motion to correct.

In *Apprendi*, the defendant was arrested for firing shots at the home of an African-American family and was charged by a grand jury with multiple crimes, including possession of a firearm for an unlawful purpose punishable by a term of imprisonment of between

five and ten years. *Apprendi* v. *New Jersey*, supra, 530 U.S. 469–70. New Jersey had a hate crime statute that provided "for an extended term of imprisonment *if the trial judge finds*, by a preponderance of the evidence, that [t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals" on a discriminatory basis. (Emphasis added; internal quotation marks omitted.) Id., 468–69. None of the charges lodged against the defendant referred to the hate crime statute and none alleged that he acted with a racially biased purpose. Id., 469. Pursuant to a plea agreement, the defendant agreed to plead "guilty to two counts . . . of second-degree possession of a firearm for an unlawful purpose" and a third-degree offense. Id., 469–70. Following a hearing, the judge found by a preponderance of the evidence that the defendant's actions were taken with a purpose to intimidate and that the hate crime statute applied. Id., 471. The judge therefore enhanced the defendant's sentence on the possession of a firearm for an illegal purpose by several years. Id., 471. The United States Supreme Court reversed the defendant's conviction, holding that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id., 490.

In the present case, the defendant contends that, as in *Apprendi*, the firearm element that enhanced his manslaughter conviction was never proven to the jury. The record does not support his claim. At trial, the state presented evidence that the defendant used a gun to shoot at the victim. See footnote 4 of this opinion. Judge Holden charged the jury on the elements of manslaughter in the first degree with a firearm, which is a distinct and separate criminal offense under Connecticut law. See footnote 5 of this opinion. The jury returned a guilty verdict against the defendant for manslaughter in the first degree with a firearm. The court sentenced the defendant to thirty-seven and one-half years of incarceration, which is a permissible sentence for that offense. See footnote 8 of this opinion. To the extent that the defendant claims that there was insufficient evidence to convict him of manslaughter in the first degree with a firearm or that the court improperly instructed or accepted the jury's verdict, those claims attack his underlying conviction, not the sentence, and are beyond a court's jurisdiction on a motion to correct. Moreover, *Apprendi* does not apply because the defendant cannot make a colorable claim that the court, not the jury, found him guilty of any of the elements of the offense for which he was convicted and ultimately sentenced.

Because the defendant does not state a colorable claim under *Apprendi*, *State* v. *Evans*, supra, 329 Conn. 770, also is inapposite. In *Evans*, the defendant was charged with one count of possession of narcotics, among other things. Id., 774. The defendant pleaded

guilty under the *Alford* doctrine[12] to possession of nar-
cotics. Id. During the plea negotiations, the defendant's
drug dependency, if any, was not addressed and no fact
finder determined whether he was drug-dependent. A
finding of drug dependency would have favorably lim-
ited the defendant's sentence. Id. The defendant was
sentenced to five years of imprisonment and five years
of special parole, which sentence was permissible only
if he was not drug-dependent at the time he committed
the underlying drug possession offense. Id., 775. The
defendant moved to correct an illegal sentence pursuant
to Practice Book § 43-22, claiming that, under *Apprendi*
and *Alleyne* v. *United States*, 570 U.S. 99, 133 S. Ct.
2151, 186 L. Ed. 2d 314 (2013), his sentence was illegal
because it "exceeded the statutory time limits and that
the fact triggering the mandatory minimum [sentence]
was not found by a proper [fact finder] or admitted by
the defendant . . . ." *State* v. *Evans*, supra, 775.

The trial court denied the defendant's motion for lack
of jurisdiction and the defendant appealed. Id., 773. In
resolving the defendant's appeal, our Supreme Court
concluded that the trial court had jurisdiction to con-
sider the claim, and affirmed the judgment of the trial
court. Id., 774. In concluding that the trial court had
jurisdiction to consider the defendant's claim, our
Supreme Court stated that "a claim is cognizable in a
motion to correct an illegal sentence if it is a challenge
specifically directed to the punishment imposed, even
if relief for that illegal punishment requires the court
to in some way modify the underlying conviction, such
as for double jeopardy challenges." Id., 781.

In the present case, the jury was instructed on all of
the elements of the offense for which the defendant
was convicted and sentenced, including the element
of using a firearm. The jury, not the judge, found the
defendant guilty of that offense. To the extent that the
defendant argues that the court misled the jury or incor-
rectly accepted its verdict, his arguments attack his
underlying conviction, not his sentence. *Evans*, there-
fore, has no application.

We agree with the state that our Supreme Court's
decision in *State* v. *Lawrence*, 281 Conn. 147, 913 A.2d
428 (2007), is controlling. In *Lawrence*, the defendant
was charged with one count each of murder, carrying
a pistol without a permit, and tampering with evidence.
Id., 150. "The murder charge alleged that the defendant
caused the death of a person by use of a firearm. At
trial, the defendant presented a defense of extreme
emotional disturbance with respect to the murder
charge. The court instructed the jury regarding that
defense with the following instruction as the defendant
had requested: If you unanimously find that the state
has proven each of said elements of the crime of murder
beyond a reasonable doubt, and if you also unanimously
find that the defendant has proven by the preponder-

ance of the evidence each of the elements of the affirmative defense of extreme emotional disturbance, you shall find the defendant guilty of manslaughter in the first degree with a firearm by reason of extreme emotional disturbance and not guilty of murder." (Internal quotation marks omitted.) Id. The jury found the defendant guilty of manslaughter in the first degree with a firearm. Id. The court rendered judgment in accordance with the verdict and sentenced the defendant to thirty-five years of incarceration. Id.

The defendant in *Lawrence* filed a motion to correct an illegal sentence pursuant to Practice Book § 43-22. Id., 151. He claimed that his conviction for manslaughter in the first degree with a firearm was improper because the jury had acquitted him of murder on the basis of the affirmative defense of extreme emotional disturbance and that the proper conviction was manslaughter in the first degree, which carries a maximum sentence of twenty years of imprisonment. Id. The trial court dismissed the motion to correct for lack of jurisdiction. Id. This court framed the question on appeal as "whether Practice Book § 43-22 is an appropriate procedural vehicle by which to challenge an allegedly improper conviction or whether the finality of the defendant's conviction, subject to any collateral challenges the defendant may raise via a petition for a writ of habeas corpus, has left the court without jurisdiction to entertain his claim." *State* v. *Lawrence*, supra, 91 Conn. App. 769. This court concluded that the "essence of [his] claim is that he was convicted of the wrong crime. He did not claim, nor could he, that the sentence he received exceeded the maximum statutory limits for the sentence prescribed for the crime for which he was convicted." Id., 775–76. "Because the defendant's claim falls outside that set of narrow circumstances in which the court retains jurisdiction over a defendant once that defendant has been transferred into the custody of the [C]ommissioner of [C]orrection to begin serving his sentence, the court cannot consider the claim pursuant to a motion to correct an illegal sentence under Practice Book § 43-22." Id., 776.

Upon the grant of certification, the defendant appealed to our Supreme Court, which concluded that this court "properly determined that, because the defendant's claim did not fall within the purview of [Practice Book] § 43-22, the trial court lacked jurisdiction." *State* v. *Lawrence*, supra, 281 Conn. 150. The Supreme Court reasoned that a "challenge to the legality of a sentence focuses not on what transpired during the trial or on the underlying conviction. In order for the [trial] court to have jurisdiction over the motion to correct an illegal sentence after the sentence has been executed, the sentencing proceeding, and not the trial leading to the conviction must be the subject of the attack. . . . [T]he defendant's claim by its very nature, presupposes an invalid conviction." Id., 158–59.

The Supreme Court's decision in *State* v. *Lawrence*, supra, 281 Conn. 147, is directly on point, and compels us to affirm the trial court's judgment dismissing the defendant's motion to correct. The defendant in this case claims that the jury intended to find him guilty of manslaughter in the first degree, not manslaughter in the first degree with a firearm. Like the defendant in *Lawrence*; id.; he challenges what transpired at trial, not at sentencing, and his claim presupposes an invalid conviction. We therefore conclude that the court properly dismissed the motion to correct for lack of jurisdiction.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any disposition made in an illegal manner."

[2] On direct appeal, the defendant claimed that the court improperly "(1) accepted the jury's verdict finding him guilty of manslaughter in the first degree with a firearm under the theory of accessorial liability and not guilty of the same crime under the theory of principal liability, thereby (a) violating his right against double jeopardy, (b) resulting in his being convicted of the nonexistent crime of being an accessory, (c) resulting in a legally inconsistent verdict and (d) returning a verdict in violation of the principles of collateral estoppel, and (2) suggested in its jury instructions that defense counsel had made an improper closing argument, thereby improperly highlighting the defendant's decision not to testify." (Internal quotation marks omitted.) *State* v. *Gamble*, supra, 119 Conn. App. 289. The defendant sought to prevail pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as he had failed to preserve those claims at trial. This court determined that the defendant could not prevail under *Golding* because the alleged constitutional violations did not exist and the defendant was not denied a fair trial. *State* v. *Gamble*, supra, 294–99.

The defendant also sought to prevail under the plain error doctrine. Id., 291 n.2; see Practice Book § 60-5. This court found that "[t]here is no error, plain or otherwise . . . ." *State* v. *Gamble*, supra, 119 Conn. App. 292 n.2.

[3] In August, 2016, the defendant filed a third amended petition for a writ of habeas corpus in which he alleged ineffective assistance of trial and appellate counsel. *Gamble* v. *Commissioner of Correction*, 179 Conn. App. 285, 289, 289 n.4, 179 A.3d 227, cert. denied, 328 Conn. 921, 181 A.3d 91 (2018). In his petition, the defendant alleged that his appellate counsel had rendered ineffective assistance on appeal by failing to raise a claim of insufficient evidence. Id., 289. This court found that there was sufficient evidence before the jury to support a finding that the defendant participated in the shooting of the victim. "[T]he victim's injuries indicated that shots had been fired from three different types of firearms. Ed Beaumon, a New Haven resident, testified that in the early evening of November 29, 2005, he was sitting on his neighbor's front porch on Kensington Street when he heard shots being fired, and he ran out to the victim and observed shots being fired from the front and rear passenger sides of a 'maroon' car. The [defendant] admitted in his statement to police that he was seated in the backseat of the BMW during the shooting. The jury reasonably could have inferred that the [defendant] fired one of the three weapons." Id., 297 n.9.

[4] The defendant was charged with murder, conspiracy to commit murder, possession of an assault weapon, and conspiracy to possess an assault weapon. *State* v. *Gamble*, supra, 119 Conn. App. 289 n.1. The jury found the defendant not guilty of those charges. Id.

[5] The court charged the jury in relevant part: "In order for you to find the defendant guilty of being [an] accessory to the crime of manslaughter in the first degree under [General Statutes] § 53a-55a (3) . . . you must find that the defendant . . . had the criminal intent required for the crime of manslaughter in the first degree; namely, [he] recklessly engaged in conduct which created a grave risk of death to another person, and the . . . defendant intentionally aided other persons under these circumstances. This

means that the accessory as described to you in count one is applicable to this lesser included offense as well. My charge on accessory applies to . . . this lesser included offense as well.

"Now, *if you find that the state has proven all [of] the elements of manslaughter in the first degree then you must consider whether the state has proven beyond a reasonable doubt that at the time and in the commission of this crime [of] manslaughter*, the lesser included offense, the accused used, or was armed with or threatened the use or displayed or represented by his words or conduct that [he] possessed a pistol or revolver or other firearm capable of firing a shot, then you must find the defendant guilty of manslaughter . . . in the first degree with a firearm. *And if you find the state has not proven those elements of proof beyond a reasonable doubt then you would find the defendant not guilty.*

"Manslaughter, lesser included offense, a person acting with the mental state required for the commission of an offense which—in this instance that, one, under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person . . . and in the commission of the crime he used or represented by his words or conduct that he possessed a pistol or revolver or a firearm . . . capable of discharging a shot, then you must find the defendant guilty of manslaughter with a firearm . . . . *If you find the state has not proven that, then you must find the defendant not guilty.* Also, applicable is the accessory as I've described to you in the charge of murder." (Emphasis added.)

The transcript of this portion of the court's jury instruction regarding the statutory citation for manslaughter in the first degree, which is an element of the offense of manslaughter in the first degree with a firearm, references "§ 53a-55a (3)." There is no § 53a-55a (3) in the General Statutes. Manslaughter in the first degree is codified at General Statutes § 53a-55 (a) (3). Manslaughter in the first degree with a firearm is codified at General Statutes § 53a-55a. See footnote 7 of this opinion.

[6] The court clerk cited § 53a-55 (a) (3) for the offense of manslaughter in the first degree with a firearm. That statute governs manslaughter in the first degree. See footnotes 5 and 7 of this opinion. The defendant did not raise that error in his motion to correct or the present appeal. As a result, we deem any claims concerning the court clerk's error abandoned. Moreover, in light of this court's prior decisions in the defendant's direct appeal and petition for a writ of habeas corpus, Judge Holden's full instruction to the jury about the offense of manslaughter in the first degree with a firearm; see footnote 5 of this opinion; the court clerk's clear question to the jury about whether it found the defendant guilty "of manslaughter in the first degree with a firearm as an accessory"; and the judgment file itself, which states that the jury found the defendant guilty of manslaughter in the first degree with a firearm as an accessory, any such claim is immaterial for purposes of the present appeal because it does not give rise to a colorable claim that the defendant was convicted of anything other than manslaughter in the first degree with a firearm.

[7] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

General Statutes § 53a-55a provides in relevant part: "(a) A person is guilty of manslaughter in the first degree with a firearm when he *commits manslaughter in the first degree as provided in section 53a-55*, and in the commission of such offense he uses or is armed with . . . a pistol, revolver, shotgun, machine gun, rifle or other firearm. . . . .

"(b) Manslaughter in the first degree with a firearm is a class B felony and any person found guilty under this section shall be sentenced to a term of imprisonment in accordance with subdivision (5) of section 53a-35a of which five years of the sentence imposed may not be suspended or reduced by the court."

[8] General Statutes § 53a-35a provides in relevant part: "For any felony committed on or after July 1, 1981, the sentence of imprisonment . . . shall be fixed by the court as follows . . . (5) For the class B felony of manslaughter in the first degree with a firearm under section 53a-55a, a term not less than five years nor more than forty years . . . ."

[9] In addition to a direct appeal, the record discloses that the defendant has filed several postconviction motions or petitions. In April, 2007, the defendant filed an application for sentence review, claiming that his sentence

was inappropriate, disproportionate, and contradicted the jury's verdict. On January 25, 2011, the sentence review division, *Alexander*, *White* and *Dooley*, *Js.*, found that the sentence imposed was appropriate and was not disproportionate given the serious nature of the offense.

In August, 2011, the defendant filed a motion to correct an illegal sentence claiming that his sentence exceeded the relevant statutory maximum limits, violated his right against double jeopardy, was ambiguous and was internally contradictory. The court, *Fasano*, *J.*, denied the motion to correct stating that the defendant's double jeopardy and internally contradictory claims had been addressed in substance and depth by this court in the defendant's direct appeal. "The judgment, therefore, was final as to those specific issues and any other matters that might have been offered in connection with the same issues. *State* v. *Aillon*, 189 Conn. 416, 423–25, [456 A.2d 279, cert. denied, 464 U.S. 837, 104 S. Ct. 124, 78 L. Ed. 2d 122] (1983). Other legal issues raised by the [defendant] and not related to the claim of double jeopardy fall outside the limited jurisdiction of the court with respect to motions to correct illegal sentences. *State* v. *Koslik*, 116 Conn. App. 693, 698–700, [977 A.2d 275, cert. denied, 293 Conn. 930, 980 A.2d 916] (2009)."

[10] See *State* v. *McCoy*, 331 Conn. 561, 586–87, 206 A.3d 725 (2019) (court loses jurisdiction upon execution of sentence).

[11] Throughout the hearing, the length of the defendant's sentence was characterized as thirty-seven years, not thirty-seven and one-half years. The difference is not relevant to the motion to correct.

[12] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).